# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:03-CR-62-2 |
| v. : | |
| : | (Chief Judge Kane) |
| HASSAN THOMAS, : | |
| : | |
| Petitioner : | |

## MEMORANDUM

Before the Court is Petitioner Hassan Thomas's ("Thomas") *pro se* motion styled "Petition to Impeach Judgment in the Interest of Justice for Extrinsic Fraud and Fraud upon the District Court." (Doc. No. 338.) As previously determined, this petition can only properly be considered as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. No. 376.) The motion is now ripe for disposition. For the reasons that follow, the Court will deny Thomas's motion.

I.     BACKGROUND

On March 12, 2003, the Government filed a seven-count indictment charging Thomas and several coconspirators with drug related offenses. (Doc. No. 1.) On September 4, 2003, Thomas entered into a plea agreement with the Government, stipulating that he would waive his right to prosecution by indictment and plead guilty to a superseding information charging him with violation of 21 U.S.C. § 841(a)(1) for distribution of cocaine and cocaine base. (Doc. No. 111.) Because no drug quantity would be specified in the superseding information, the maximum term of imprisonment for this offense was 20 years under 21 U.S.C. § 841(b)(1)(C).

On September 09, 2003, Thomas appeared before the Court to enter a plea of guilty pursuant to this plea agreement. After the Court engaged in a thorough plea colloquy with Thomas, the Government proffered a factual basis for the plea. (Transcript, Change of Plea and

Motion Hearing, at 24:2-26:9 (hereinafter "Plea Tr.").) Though questioning some of the factual basis, Thomas admitted that he distributed crack cocaine on the dates and times proffered by the Government. (Id. at 27:19-23.)

On May 20, 2004, Thomas appeared before the Court for sentencing. He raised two objections to his presentence investigation report: (1) he was only involved in the sale of powder and not crack cocaine; and (2) he was not responsible for the asserted drug quantity of 500 grams to 1.5 kilograms. (See Transcript, Sentencing Hearing, at 3:8-14 (hereinafter "Sentencing Tr.").) After hearing testimony from witnesses called by both parties, the Court overruled Thomas's first objection and found that he was dealing in crack cocaine for purposes of his guideline calculation. (Id. at 103:1-7.) The Court sustained Thomas's second objection, however, finding that the evidence only showed drug quantity of between 50 and 150 grams of crack cocaine. (Id. at 103:8-15.) After recalculating Thomas's guideline range with these findings, the Court imposed a sentence of 176 months imprisonment. (Id. at 106:11-15.)

Thomas appealed his sentence (Doc. No. 200), and while that appeal was pending, the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220 (2005). Accordingly, in an amended opinion,[1] the Third Circuit remanded the case for resentencing so that the Court could apply the sentencing guidelines in an advisory manner. See United States v. Thomas, 173 F. App'x 177, 178 (3d Cir. 2006).

Thomas appeared before the Court for his resentencing hearing on July 17, 2006. At the

---

[1] The Third Circuit's opinion initially held that drug quantity had to be admitted by the defendant or found by a jury and could not be properly determined by the district judge at sentencing. (See Doc. No. 266-2.) The Government argued for reconsideration of that ruling in light of the circumstances of Thomas's case. (Doc. No. 380 at 4-5.) In response, the Third Circuit issued an order amending the opinion to state: "After Booker, such facts may be found by the District Judge, but only if the sentencing guidelines are applied in an advisory manner." (See Doc. No. 266-3.)

outset, Thomas's counsel conceded that the Court "accurately determined the applicable guideline range" in his original sentencing hearing. (See Transcript, Resentencing Hearing, at 2:8-12 (hereinafter "Resentencing Tr.").) Thomas's counsel went on to argue extensively for a variance from the guideline range under Booker and 18 U.S.C. § 3553(a) for reasons including his background, upbringing, unwarranted sentencing disparities, and the 100-to-1 crack-to-powder cocaine ratio. Considering those arguments and all the factors under § 3553(a), the Court determined that a variance was not warranted and that the originally imposed sentence of 177 months was appropriate under the circumstances. (Id. at 23:16-24:2.)

Thomas appealed his resentencing, arguing that the sentence imposed was unreasonable. United States v. Thomas, 254 F. App'x 937, 938 (3d Cir. 2007). The Third Circuit rejected this argument and affirmed the Court's 177 month sentence.[2] Id. Thomas then filed the present motion.

## II. DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence on the grounds that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. In evaluating a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005) (quoting Government of the Virgin

---

[2] On October 2, 2009, the Court granted a further reduction of Thomas's sentence to 143 months as a result of the recent crack cocaine amendments to the Federal Sentencing Guidelines. (Doc. No. 175.)

Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)). Read liberally, Thomas's *pro se* motion and brief in support raise issues regarding the ineffective assistance of his counsel at his resentencing hearing and failing to make further argument for a sentencing reduction based on acceptance of responsibility. (Doc. Nos. 338-39.) In his response to the Government's brief, Thomas also attempts to raise new issues not raised in his initial petition, including challenges to the Court's determinations at his sentencing and the validity of his guilty plea. (Doc. No. 383.) The Court will address these contentions in turn.

### A. Ineffective Assistance of Counsel

To assess whether Thomas's counsel was constitutionally ineffective, the Court applies the standard set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, "a criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance." United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005). The first prong requires that the defendant identify counsel's challenged acts or omissions and show that counsel's representation fell below an objective standard of reasonableness. See United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008) (citing Strickland, 466 U.S. at 688). Judicial scrutiny is highly deferential under the first prong, and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Booth, 432 F.3d at 546 (quoting Strickland, 466 U.S. at 688-89)). To establish prejudice for the second prong, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When evaluating a claim of ineffectiveness under Strickland, the Court may consider the prejudice prong before examining the performance of counsel prong "because this course of action is less burdensome to defense counsel." Lilly, 536 F.3d at 196 (quoting Booth, 432 F.3d at 546)).

### 1. Conceding Original Guideline Calculations

Thomas argues throughout the motion that his counsel was ineffective in presenting Thomas's defense to the Court at the resentencing hearing. Thomas specifically finds fault with his counsel's initial statement, conceding that: "at the initial sentencing hearing, the Court accurately determined the applicable guideline range. Your Honor determined that the offense level was 32 and the criminal history category was four, and there is no dispute about that." (Resentencing Tr. at 2: 8-12.) Thomas decries his counsel for this admission, arguing that it was against his desire to fight for a sentence based on powder cocaine. (Doc. No. 339 at 2-14.)

The Court will reject Thomas's argument. It is true that Thomas's counsel conceded the Court's original guideline calculation and did not present any argument against a sentencing guideline range calculated using crack cocaine at the resentencing hearing. As the Government argues, however, there is no indication from the record or from Thomas's submissions that this concession constituted ineffective assistance under these circumstances. (Doc. No. 380 at 4.) In his original sentencing hearing, Thomas's counsel raised objections to the presentence investigation report regarding these same issues. The Court heard extensive testimony and argument concerning the applicable drug type and quantity that Thomas distributed. (See Sentencing Tr. at 5-95.) Indeed, though overruling Thomas's objection to using the crack

5

cocaine guideline range, the Court sustained his objection to drug quantity:

> I've reviewed very carefully the Government's evidence that was presented with respect to the drug amount in this case. As I stated before on the record, I do find conclusively that the drug in question, is, indeed, crack cocaine. I cannot find, however, that the drug amounts are as recommended in the probation report. I think that the competent evidence on the record does not rise to the amount stated in the report, but rather that the proper drug amount, based on the competent testimony before the Court is in the 50 to 150 range [instead of 500 grams to 1.5 kilograms] . . . .

(Sentencing Tr. at 103:3-15.) Thomas does not suggest that his attorney was ineffective in arguing this point at the initial sentencing hearing—not that such a claim would have merit—or that any circumstances had changed in between his sentencing and resentencing hearings. Instead, as the Government points out, it appears that Thomas misapprehends the nature of the Third Circuit's remand in this case. Thomas suggests that the Third Circuit's remand order entitled him to new findings on these issues:

> [B]oth attorneys, opposition and defense, and the court itself knew and understood that CJA attorney Lock opening statements stripped [Thomas] of his right to the remedy created by the entitlement to a new fact finding sentencing hearing as remanded by the Appellate Court's Order vacating the 176 Month sentence . . . .

(Doc. No. 339 at 3.) It is clear, however, that the Third Circuit's remand order did not upset the Court's earlier factual findings in this case. As discussed above, the Third Circuit remanded the case so that the Court could resentence Thomas in accordance with the Supreme Court's ruling in Booker, requiring that district courts apply the sentencing guidelines in an advisory manner. Thomas, 173 F. App'x at 178. Despite this, a remand for Booker does not necessarily require a district court to revisit all prior determinations made at sentencing:

> Nothing in Booker or the Supreme Court's order in this case necessarily calls into question the correctness of the District Court's

6

> factual findings or procedural decisions at the resentencing, or, for that matter, this court's approval thereof. To be sure, in light of Booker the District Court on remand must employ the Guidelines as advisory precepts rather than as mandatory. It must further tailor Miller's sentence in perspective of the statutory requirements identified by the Booker Court . . . . We merely note that the District Court is free to engage in precisely the same exercise in judicial fact finding as it did . . . so long as such fact finding is consistent with Booker. Likewise, nothing in Booker causes us to retreat from our prior approval of the District Court's interpretation and application of the Guidelines to Miller's case . . . .

United States v. Miller, 417 F.3d 358, 362-63 (3d Cir. 2005) (internal citations omitted). Indeed, Thomas's co-defendant, Dedric Hayes, argued that the Court should make new findings on drug quantity at his resentencing, which both this Court and the Third Circuit rejected:

> Hayes argues that the District Court erred by rejecting his objection to the drug amount calculation without conducting an evidentiary hearing. Hayes's position is that the remand of this case for re-sentencing in light of Booker "opened up the ability for the sentencing court to consider Hayes's calculation of drug amounts." The District Court believed that determining the drug amount on remand was outside the scope of this Court's mandate for re-sentencing, and ruled that it would not hear evidence of drug quantities during the re-sentencing hearing. . . . When we vacated and remanded for re-sentencing, we did so in light of Booker, not on the basis of an error in the drug amount calculation. Therefore, the District Court did not err by refusing to allow Hayes to reinstate his objection to the drug amount calculation.

United States v. Hayes, 256 F. App'x 541, 543 (3d Cir. 2007). Accordingly, it would have been meritless for Thomas's counsel to try and rehash these same issues at the resentencing hearing. Thomas's attorney cannot be ineffective for failing to raise a meritless argument. See Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010) (citing Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998)).

**2. Acceptance of Responsibility**

7

Thomas appears to argue in his motion that his attorney was ineffective for failing to effectively argue for a reduction of his base offense level based on acceptance of responsibility. (Doc. No. 339 at 14.) He further argues that it was ineffective assistance for his counsel to advise him to not to give a statement to the probation officer during the presentence investigation report (Doc. No. 383 at 6), which was listed as part of the reason the presentence report recommended that no credit be given for acceptance of responsibility (Presentence Investigation Report, ¶ 17 (hereinafter "PSR")).

The Court will reject this argument. Thomas's sentence was initially calculated under the sentencing guidelines effective November 1, 2003. (PSR ¶ 10.) § 3E1.1 of the 2003 guidelines provides a decrease of two levels[3] on the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." The commentary, noting that "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right," provides several factors for the Court to consider in making this determination, including in pertinent part:

> truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with

---

[3] At points in his submissions, Thomas appears to suggest that he was entitled to a three-point reduction for acceptance of responsibility. This is clearly not the case, however, as § 3E1.1clearly provides that the third point can only be reduced upon motion of the Government. See U.S.S.G. § 3E1.1 Application Note 6 (2003). There is no indication from the record that the Government ever chose to make such a motion in Thomas's case.

>      acceptance of responsibility . . . .

U.S.S.G. § 3E1.1 Application Note 1.

From reviewing the record, it is true that Thomas's attorney did not object to the recommendation in the presentence report that no reduction for acceptance of responsibility be given. As the Government argues, however, Thomas has not pointed to any factors or circumstances other than his guilty plea that his attorney may have used to justify such an objection. It is clear from the record that Thomas has frivolously contested elements of his crime since he plead guilty to the offense, particularly the identity of the drug he distributed. At the change of plea colloquy, Thomas admitted under oath that he distributed crack cocaine at the places and times referenced in the Government's factual basis proffer. (Plea Tr. at 27: 19-23.) Subsequently, he apparently began to deny these representations to the Court. Shortly before sentencing, he filed a *pro se* motion seeking to withdraw his guilty plea in which he asserted: "If my lawyer and the prosecutor never would have agreed that the drug type was cocaine powder I never would have pled guilty." (Doc. No. 194.) Under these circumstances, it is likely that Thomas's attorney advised him not to discuss his participation in the offense with the probation officer because these denials would have further undermined his chances for an acceptance of responsibility reduction.

At his sentencing hearing, Thomas agreed to withdraw the motion to withdraw his guilty plea when he learned his counsel was preserving the objection to crack cocaine at sentencing. (Sentencing Tr. at 4:9-18.) Despite his insistence that he did not distribute crack cocaine, the Court had no difficulty finding that the evidence presented at the hearing conclusively showed that Thomas was responsible for distribution of crack and not powder cocaine. (Id. at 103:3-7.)

9

Given the Court's finding, Thomas's position, which he continues to take in the present motion, was a frivolous recantation of his prior admission under oath as to his relevant conduct for this crime. His conduct certainly did not "clearly demonstrate[] acceptance of responsibility for his offense." Accordingly, there has been no prejudice as required by Strickland: Thomas cannot demonstrate a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

### B. New Claims Raised in Thomas's Response

Thomas raises several arguments in his response to the Government's brief that were not raised before this Court, the Third Circuit in his direct appeal, or even in his initial § 2255 motion: (1) the Government had no authority to charge him with distributing crack cocaine in the indictment (Doc. No. 383 at 3); (2) it was a violation of due process for the Court to find that the substance involved in this case was crack cocaine because he did not plead guilty to distributing crack or to a specific drug amount (Id.); and (3) that he should be allowed to withdraw his plea because he did not receive a three-level sentence reduction for acceptance of responsibility (Id. at 4-5). Even read liberally, Thomas's original motion has not fairly raised these grounds for relief such that the Government had a fair opportunity to respond. Thomas's responsive brief was not a vehicle to raise new issues, especially considering the Court's notice sent pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999), on August 25, 2009, advising Thomas that "failure to present a claim at this time may waive or forfeit forever the right to present the claim to a federal court." (Doc. No. 367.) Despite this, even were these issues raised in Thomas's original motion, they would not entitle him to relief.

Because these arguments do not involve claims of ineffective assistance and were not

10

presented to this Court or to the Third Circuit on direct appeal, they are subject to the cause and actual prejudice test. It is clear that failure to raise a claim on direct appeal results in a procedural default and forecloses collateral review unless the petitioner shows cause to excuse the default and actual prejudice resulting from the errors, or that he is actually innocent. United States v. Frady, 456 U.S. 152, 167-68 (1982); see also United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("Frady's cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed."). To establish "cause" for excuse of procedural default, a defendant must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim." United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (citing McCleskey v. Zant, 499 U.S. 467, 493 (1991)). To demonstrate actual prejudice, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage. Frady, 456 U.S. at 171.

Thomas fails to meet either prong of the Frady test. He does not attempt to explain in his brief why these claims were not presented on his direct appeal, so he has failed to establish cause to excuse the procedural default. He also fails to show actual prejudice because his claims are meritless and would not entitle him to any relief.

Thomas never elaborates why he contends the Government was without authority to charge him with distributing crack cocaine, and the Court can not conceive of a valid reason. Accordingly, this claim is too vague, undeveloped, and conclusory to warrant further consideration. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (citing United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988)).

In his second claim, Thomas provides scant more elaboration. It appears his argument is

that the Court violated due process by calculating his sentence based on any facts that he had not personally admitted, such as drug type and quantity. The first problem with this argument is that, as set out above, Thomas did plead guilty and admit to distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). It is true that the charge did not include a certain drug quantity, but that only alters the applicable penalty provision for his violation of § 841(a)(1). In the case of crack cocaine, there are basically three penalty tiers. See United States v. Sanchez-Gonzalez, 294 F.3d 563, 565 (3d Cir. 2002). The tier at issue in this case is § 841(b)(1)(C). This subsection is a baseline provision providing penalties for those offenders who are convicted under § 841(a) for an unspecified quantity of, *inter alia*, controlled substances in schedule I or II such as crack or powder cocaine.[4] See 21 U.S.C. § 841(b)(1)(C). Thomas's sentence was imposed under § 841(b)(1)(C), so he did not have to admit to a specific drug quantity as an element of the charge against him. See Sanchez-Gonzalez, 294 F.3d at 565Id. ("[A] defendant as to whom drug quantity has not been found by a jury beyond a reasonable doubt should be sentenced under § 841(b)(1)(C), because only that section does not base the sentence on drug quantity."). Accordingly, the Court properly made findings on these issues by a preponderance of the evidence at sentencing to calculate his guideline sentencing range. See United States v. Grier, 475 F.3d 556, 567-68 (3d Cir. 2007) (en banc).

In his third claim, Thomas suggests he should be allowed to withdraw his guilty plea because he did not receive a three-level reduction for acceptance of responsibility. Thomas claims that "the government promised him the 3 levels off in the plea agreement . . . so his plea

---

[4] Thomas has never denied distributing powder cocaine. Accordingly, because § 841(b)(1)(C) provides penalties for distribution of either crack or powder cocaine, he would have been subject to these penalties even if he had not plead guilty to distributing crack cocaine.

12

agreement was breached." (Doc. No. 383 at 5.) This claim is meritless. Thomas's plea agreement with the Government provides in pertinent part:

> Counsel for the defendant has affirmatively indicated to the United States Attorney's Office that the defendant not only wishes to plead guilty, but will clearly demonstrate a recognition and affirmative acceptance of responsibility as required by the sentencing guidelines. If the defendant can adequately demonstrate this recognition and affirmative acceptance of responsibility to the Government, the United States Attorney's Office will recommend that the defendant receive a three level reduction in the defendant's offense level for acceptance of responsibility. The failure of the Court to find that the defendant is entitled to a three level reduction shall not be a basis to void this plea agreement.

(Doc. No. 111 ¶ 11.) It is clear from this language that the Government was not obligated to recommend a reduction unless it independently determined that Thomas adequately demonstrated acceptance of responsibility. Additionally, it is also clear that failure to receive an acceptance of responsibility reduction is not a basis to void the plea agreement. This point was emphasized in other provisions of the agreement (See e.g., id. ¶ 15), and also at Thomas's change of plea hearing. At the hearing, the Government first explained that Thomas was not necessarily entitled to a Government recommendation for acceptance of responsibility:

> [Goverment]: [Thomas] has indicated through counsel that he will be able to demonstrate that he accepts responsibility for his conduct, and if he can do that to the satisfaction of the government, including the probation department, there would be a recommendation for a 3 level reduction for acceptance of responsibility. I would note at this point, however, that there has been no contact or discussion of any substance with the defendant, so that's from this point on up to him to be able to demonstrate the acceptance of responsibility.

(Plea Tr. at 12:10-19.) In its own colloquy with Thomas, the Court also emphasized this point:

> [The Court]: Mr. Behe is going to make certain recommendations to me. . . . If he makes that [acceptance of responsibility] recommendation and if the probation department makes that

>recommendation to me, I will have to make an independent determination of whether you're entitled to that in this case. I don't know at this point . . . .

(Id. at 14:6-19.) Thomas indicated that he understood this aspect of his plea agreement. (Id. at 14:20.) Accordingly, there is no basis for him to suggest that he should be allowed to withdraw his plea.

Considering the above, Thomas cannot meet the Frady cause and actual prejudice standard to cure the procedural default of these claims. Additionally, even if these claims were not procedurally defaulted, they are clearly meritless and do not entitle Thomas to any relief.

## III. HEARING AND CERTIFICATE OF APPEALABILITY

### A. Evidentiary Hearing

The decision of whether or not to hold an evidentiary hearing when a petitioner brings a motion to vacate pursuant to § 2255 is within the discretion of the district court, though there are limitations on this discretion. United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). The district court is required to hold a hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (citing Booth, 432 F.3d at 545). This is a low threshold and is not a high bar for petitioners to meet. Id.

For the reasons discussed above, the Court finds that Thomas has not met this threshold and that the motion, files, and records of the case show conclusively that he is not entitled to any relief. As such, the Court declines to conduct an evidentiary hearing in this matter.

### B. Certificate of Appealability

Pursuant to Rule 11 of the Rules governing § 2255 cases, at the time a final order

denying a petition under 28 U.S.C. § 2255 is issued, the Court must make a determination as to whether a certificate of appealability should issue pursuant to 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debateable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court dismisses the petition based on procedural grounds,

> "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.

Id.

Considering the above, Thomas cannot make a substantial showing of the denial of a constitutional right, and the Court is not persuaded that a reasonable jurist would debate the correctness of the Court's determinations in this ruling. Therefore, Thomas cannot meet the standard required by § 2253(c) and the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Thomas's motion. The Court shall not issue a certificate of appealability. An order consistent with this memorandum will follow.

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:03-CR-62-2 |
| v. : | |
| : | (Chief Judge Kane) |
| HASSAN THOMAS, : | |
| : | |
| Petitioner : | |

## ORDER

**AND NOW**, this 13th day of July 2010, upon consideration of both Petitioner Hassan Thomas's pro se motion styled "Petition to Impeach Judgment in the Interest of Justice for Extrinsic Fraud and Fraud upon the District Court" (Doc. No. 338), construed by the Court as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, and motion for summary judgment on this motion (Doc. No. 365), filed in the above-captioned matter, and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motions are **DENIED**.

**IT IS FURTHER ORDERED THAT** a certificate of appealability shall not issue, in that the Petitioner has not made a substantial showing of the denial of a constitutional right or demonstrated that a reasonable jurist would debate the correctness of this ruling.

                                         s/ Yvette Kane
                                        Yvette Kane, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania